**HELTON LAW GROUP**
**A PROFESSIONAL CORPORATION**
CARRIE S. McLAIN (State Bar No. 181674)
Email:  cmclain@heltonlawgroup.com
MARK S. HENNINGS (State Bar No. 100906)
Email:  mhennings@heltonlawgroup.com
ATTORNEYS AT LAW
401 East Ocean Boulevard, Suite 1010
Long Beach, California 90802
TELEPHONE: (562) 901-4499
FACSIMILE:  (562) 901-4488

ATTORNEYS FOR PLAINTIFF DOCTORS MEDICAL CENTER OF MODESTO, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOCTORS MEDICAL CENTER OF MODESTO, INC., a California corporation,<br><br>              Plaintiff,<br><br>vs.<br><br>PRINCIPAL LIFE INSURANCE COMPANY, an Iowa corporation; and DOES 1 through 25, inclusive,<br><br>              Defendants. | Case No: 1:10-cv-00452-LJO-SKO<br><br>ASSIGNED TO:<br><br>HON. LAWRENCE J. O'NEILL<br>UNITED STATES DISTRICT COURT JUDGE<br><br>-AND-<br><br>HON. SHEILA K. OBERTO<br>UNITED STATES MAGISTRATE JUDGE<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS**<br><br>**[FILED CONCURRENTLY HEREWITH DECLARATION OF PEG WALLIN IN SUPPORT THEREOF]**<br><br>Hearing Date:   March 3, 2011<br>Time:              8:30 a.m.<br>Place:             Courtroom 4 |

Plaintiff, Doctors Medical Center of Modesto, Inc. opposes defendant's motion seeking the imposition of unspecified monetary sanctions and non-monetary directives against plaintiff. Plaintiff has advocated and continues to vigorously advocate that its

---

1

1   claims against Defendant continue to be warranted by existing law and fact. Plaintiff
2   Hospital has maintained and continues to maintain that the complaint was not and is not
3   frivolous under the law and that its contents and allegations has evidentiary support.

4   ## I.   INTRODUCTION

5   Defendant has filed the instant motion with no supporting declaration(s)
6   whatsoever, alleging that that there is no factual or evidentiary support for the filing of
7   the complaint, which has **16 causes of action sounding in breach of contract, breach**
8   **of implied contract, negligent misrepresentation and quantum meruit** arising out of
9   the Defendant's underpayment of claims submitted to defendant by Plaintiff Hospital of
10  $161,562.42 (plus 15% interest per annum) arising out of the Plaintiff's care and
11  treatment of 4 patients circa 2008. At least 12 of these causes of action are not based on
12  an allegation against defendant for the breach of any written contract(s).

13  The suit filed against Defendant by Plaintiff Hospital is not frivolous. The
14  defendant's motion pertains only to 4 of the 16 causes of action alleged. For these
15  reasons, as well as others below Defendant's motion should be summarily denied.

16  Plaintiff Hospital submits Exhibits A and B to this opposition. These documents
17  are "1st Level Appeals" directed to Defendant on the claims re: two patients as part of
18  this claim signed by 2 different Appeals Specialists of Plaintiff Hospital submitted on
19  4/7/2009 attached hereto as Exhibit "A" and on 5/4/2009 attached hereto as Exhibit
20  "B". The Court should take notice that these 1st Level Appeals to Defendant's denials
21  of Plaintiff Hospital's claims substantiate Plaintiff Hospital's investigation undertaken
22  **prior to the filing** of the complaint that **"Doctors Medical Center of Modesto does**
23  **not have an Aetna Signature Product".** As will be stated below, and affirmed in the
24  declaration of Peg Wallin, the **ASA Product was not added to the contract with**
25  **Plaintiff Hospital until January 2010, long after the services were rendered to**
26  **these four patients**.

27  ///
28  ///

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

## II.    STATEMENT OF FACTS

On or about July 1, 2008, Plaintiff Hospital entered into the MPI Participating Facility Agreement ("MPI Agreement") to provide medical care at reduced rates to Participants of MPI's Client's Program. Defendant Principal is a Client, as that term is defined by the MPI Agreement.  The purpose of the MPI Agreement was to set forth the terms of reimbursement when Hospital provides medical services to a member of a Client's health plan or program (a "Participant" or "Member"). According to the MPI Agreement, Plaintiff Hospital is required to provide medical services to any Participant in a Client's Program in need of such medical services, and Defendant Principal (as a Client) is required to pay Plaintiff Hospital for such medical services rendered in accordance with the terms of the MPI Agreement.

Defendant Principal failed and continues to refuse to fully compensate Plaintiff Hospital pursuant to the terms of the MPI Agreement ("Multiplan") and, alternatively, has breached at least one **implied contract**, committed at least one act of **negligent misrepresentation**, and is indebted to plaintiff for at least one act compensable under the theory of ***quantum meruit*** for failing and refusing to pay for medical services, supplies, and equipment rendered by Plaintiff Hospital to the four patients.

According to Defendant Principal, its underpayment was based on the terms of a separate discount agreement between Aetna and Hospital ("Aetna Agreement"), upon which Aetna made its erroneous reimbursement calculations. Defendant Principal contends that the Patients were members of health plans operated by Aetna Signature Administrators ("ASA") and that, as such, they qualify for application of discounts found in the Aetna Agreement.

Hospital refutes this notion. The Aetna Agreement only allows Aetna companies which are listed as Affiliates to participate in these discounts. The Aetna Agreement defines an Affiliate as a "corporation, partnership, or other legal entity… owned or controlled by [Aetna]. [Aetna]'s parent company, Aetna, Inc., includes a list of Affiliates as an exhibit to its Form 10-K as filed each year with the Securities and

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

1    Exchange Commission ('SEC')." **The Aetna Agreement in the contract with**
2    **Plaintiff Hospital at the time of the services rendered makes no direct reference to**
3    **ASA as a participating "product," or as an Affiliate of Aetna,** and ASA is not listed
4    in Aetna's 10-K filings for either 2008 (when the claims arose) or 2010 as a subsidiary
5    of Aetna, Inc. **The only reference to Aetna's "Signature" line of products is made in**
6    **a January 1, 2010** amendment to the Aetna Agreement which, in part, adds a specific
7    provision stating that "Signature" products are payable at the rates in the Aetna
8    Agreement. (See, page 16 of the 2010 agreement submitted by Defendant as Exhibit A).
9    However, this 2010 amendment post-dates the dates of service of the claims at issue and
10   is inapplicable to the pricing of these claims.

11        The specific inclusion of "Signature" products in the 2010 amendment also
12   evidences that ASA products *were not included in the original 2007 Aetna Agreement*
13   *– and thus, were not allowed to access the Aetna Agreement discount rates.* Because
14   ASA was not a listed affiliate of Aetna, or included in the original Aetna Agreement, the
15   discounts in the Aetna Agreement do not apply to the claims at issue as of 2008. As a
16   result, the proper discount is found in the MPI ("Multiplan") Agreement, to which
17   Principal is a party. Plaintiff submits the declaration of Peg Wallin, Assistant Vice
18   President for Managed Care for Tenet California. She affirms that there was no Aetna
19   Signature Administrators discount rate in effect at Doctors Medical Center Modesto,
20   Inc. in the year 2008.

21        Plaintiff Hospital seeks to recover damages, interest, costs of suit and for other
22   such further relief as the court deems proper based on the breaches of the MPI
23   Agreement which resulted from Principal's underpayment of the four claims at issue.
24   Alternatively, Hospital seeks relief based on implied contract, negligent
25   misrepresentation, and *quantum meruit* theories of recovery. According to the terms of
26   the MPI Agreement, Principal owes Hospital a total of $194,443.45. Defendants paid
27   $32,881.03 leaving a principal balance due and owing in the amount of $161,562.42.
28   ///

1  Plaintiff is also seeking statutory interest under Cal. Health & Safety Code § 1371 (15%
2  *per annum*) or Cal. Civ. Code § 3287(a) (10% *per annum*) as the Court may allow.

3  **III.  ARGUMENT**

4       This is essentially a fee-payment dispute arising out the non-payment of over
5  $161,562.00 Defendant owed Plaintiff Hospital, with interest accruing per annum.
6  Plaintiff stridently and vehemently maintains that Aetna Signature Administrators did
7  not have access to the Aetna HMO/PPO agreement with Plaintiff Hospital at the time
8  the services to the four patients was rendered. Plaintiff also maintains, and submits that
9  it will prove at trial that the correct reimbursement due to Plaintiff was according to the
10 Multiplan Contract rates of 86% of billed charges.

11      Conspicuously absent in the motion is any reference to any declaration(s) from
12 any negotiators or Directors of Financial Services substantiating any of defendant's
13 allegations or assertions regarding defense counsel's unverified contract interpretation
14 (or , as Plaintiff Hospital asserts, misinterpretation).  Defendant appears to maintain that
15 it's contentions with regard to the entire complaint is and has been irrefutably proven,
16 by mere reference to the four corners of the documents contained in Defendant's Exhibit
17 A of its moving papers.

18      Conversely, Defendant boldly makes the erroneous assessment and assumption
19 that the 16 causes of action by Plaintiff Hospital against defendant (12 of which do not
20 even sound in a written contract cause of action) can be deemed "frivolous" and that the
21 complaint, in its entirety was filed for "an improper purpose".  There is no deposition
22 testimony of any party or witness, much less any declarations, even those of the defense
23 attorney bringing this motion, to substantiate or to buttress these conclusory contentions.

24      Plaintiff maintains that at the time of the services it rendered to the four patients
25 in 2008 it had not reached a formal agreement to the terms and fees with "ASA". An
26 agreement on these terms and costs would be essential to any contractual meeting of the
27 minds in any jurisdiction. Plaintiff directs the Court to page 12 of 20, in paragraph 8.3
28 ///

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

("Introduction of New Plans and Products") of the agreement in place with AETNA submitted by Defendant as Exhibit A.

Defendant failed to inform the Court of the contents of the last line of paragraph 8.3 which reads, "If Company and Hospital cannot reach agreement on new rates for the new plans or products, the terms of this Agreement shall not apply to Hospital services provided to Members enrolled in such new Plans or product."  Plaintiff Hospital contends that this has direct application to the ("ASA") issue proffered by Defendant. The evidence is and will be shown at trial by live testimony of witnesses that there was simply and unequivocally **no agreement with Aetna and Plaintiff Hospital regarding ("ASA") rates and terms until 2010, nearly two years after the dates of service by Plaintiff Hospital to theses four patients.**

For example, Plaintiff Hospital has disclosed to Defendant, the witness Cindy Baccellieri, Director of Financial Services for Plaintiff Hospital, as being an individual likely to have discoverable information that Plaintiff may use to support its claims. Defendant has not taken, or even noticed, her deposition much less those of the Appeals Specialists authoring Exhibits A and B submitted by Plaintiff.

It would appear that defendant contends that **all issues and facts in this matter can** be simply, conclusively and irrefutably determined in Defendant's favor, even to the extraordinary extent of certainty of truth Defendant believes justifies the seeking of the imposition of sanctions against Plaintiff Hospital, by simply referencing and subjectively interpreting (or misinterpreting) a series of contracts it submits sequentially as Exhibit A. These contracts have been submitted by Defendant ostensibly to "prove" to the Court that all 16 causes of action alleged by Plaintiff Hospital against Defendant with regard to services rendered to all 4 patients are in essence "frivolous" and are a sham. Plaintiff Hospital maintains that nothing could be further from the truth.

Plaintiff Hospital submits that there has been no showing whatsoever that the complaint or any part thereof is factually and legally baseless. Nor has there been any evidence or factual basis for defendant to contend that Plaintiff's Counsel, at any time,

1  failed to conduct the necessary reasonable and competent inquiry to pursue this case
2  either prior to the filing of the lawsuit or thereafter. Plaintiff maintains that this matter
3  could very well be tried to a verdict in its favor on all 16 causes of action with the facts
4  and witness it has or has available to it.

5      Defendant has not taken any depositions or filed any declarations on its behalf in
6  support of this motion. The apparent fact that Defendant's counsel does not concur with
7  Plaintiff's interpretations of the contract language of the multiple sequential agreements
8  attached as Exhibit A by Defendant to the moving papers, is hardly the standard by
9  which requests for sanctions are legitimately sought or requested against a party under
10 FRCP Rule 11. In effect, Plaintiff contends that Defendant's misbegotten motion
11 appears to be, in reality, a not-so-thinly-veiled and unsupported Judgment on the
12 Pleadings or, at the very least, a Motion for Summary Judgment.

13 **IV.   DEFENDANT'S MOTION FOR SACTIONS UNDER FRCP 11 SHOULD**
14 **     BE SUMMARILY DENIED**

15     Rule 11 was never meant by parties to a contentious lawsuit to be used as a "toy".
16 Its use should be the exception rather than the norm. Plaintiff maintains that beyond
17 engendering collateral litigation that consumes the time of the Court, and incurs expense
18 for the parties, the indiscriminate use of FRCP Rule 11 even further erodes civility in
19 litigation to the detriment to all.

20     If the pleadings are not frivolous, (which is definitely the case at hand) even a
21 lack of "pure heart" on the part of Plaintiff's counsel is not sanctionable. Townsend v.
22 Holman Consulting Corp., 929 F. 2d 1358 (9th Cir. 1990) (en banc), cited with approval
23 also In Re: Keegan Mgmt Co, Securities Litigation, 78 F. 3d 431,434 (9th Cir. 1996).
24 Neither has been shown in the instant matter.

25     **FRCP 11 (b) (3) requires only a likelihood of evidentiary support** after a
26 reasonable opportunity for further investigation or discovery at the time of filing the
27 complaint.  Plaintiff has clearly met this minimal standard.  The Court in O'Brien v.
28 ///

1    Alexander 22 F 3d1274,1279 (3rd Cir 1994) held that the level of evidentiary support

2    sufficient could **be "de minimus"**.

3        In the Townsend v. Holman Consulting Corp 929 F. 2$^d$ 1358, 1364 (9th Cir. 1990)

4    matter the Court, without applying the "pleadings- as -a- whole rule", refused to affirm

5    an award of sanctions for certain kinds of conduct by emphasizing… **"it must be based**

6    **on an assessment of the "significance" of the claim in the pleading as a whole"** The

7    relation of the allegedly frivolous claim to the pleading as a whole is thus a relevant

8    factor, but the mere existence of one non-frivolous claim is not dispositive.  Townsend

9    is still the law. In the instant matter none of the 16 causes of action not even addressed

10    by Defendant's motion, many of them not even contractual, are frivolous.

11        Professor Tobias correctly noted, "Rule 11 motions should not be prepared or

12    threatened for minor, inconsequential violations or as a substitute for traditional motions

13    designed to challenge the sufficiency of the pleadings." C. Tobias, "Civil Rights

14    Plaintiff and the Proposed Revision of Rule 11" 77 Ia. L. Rev. 1775, 1780 (1992).

15    Plaintiff affirms the absence of even minor or inconsequential violations herein.

16        Rule 11 sanctions are clearly discretionary. Simpson v. Lear Astronics Corp., 77

17    F. 3d 1170 (9th Cir 1996); Moore v. Local 569 of  Int'l Brotherhood of Electrical

18    Workers, 53 F. 3d 1054 (9th Cir. 1995). **The court is not required to impose a**

19    **monetary sanction or even any sanction at all.** Even if a violation has clearly

20    occurred, the court may decide to impose no sanction. [Committee Notes on

21    Amendments to Federal Rules of Civil Procedure (1993) 146 FRD 401, 587]

22        **Even the outcome of the case is not dispositive Rule 11 sanctions do not**

23    **automatically or usually follow an adverse ruling or judgment.** "Litigants misuse the

24    Rule when sanctions are sought against a party or counsel whose only sin was being on

25    the unsuccessful side of a ruling or judgment." *Gaiardo v. Ethyl Corp.* (3rd Cir. 1987)

26    835 F2d 479, 483. Even if the evidence relied upon would be insufficient to survive a

27    motion for summary judgment, that does not mean the claim is factually unfounded for

28    purposes of Rule 11. *Stitt v. Williams* (9th Cir. 1990) 919 F2d 516, 527; *Warren v. City*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

1  *of Carlsbad* (9th Cir. 1995) 58 F3d 439, 444. Defendant, in this matter, arrogantly and
2  mistakenly suggests in the absence of any declarations or testimony that the "outcome
3  of this case" in its favor is assured on all 16 causes of action is assured. Erroneous as
4  that mistaken assertion is in the instant case, even that is not the standard for the
5  application of Rule 11.

6      One option available to the Court, when a Rule 11 motion is filed, is to defer its
7  resolution until the conclusion of the case. Deferral allows the Court "to gain a sense of
8  the case and to avoid the unnecessary delay of disposition of the case on the merits".
9  Lichenstein v. Consolidated Services Group, In., 173 F. 3d 17,23 (1st Cir. 1999).

10     The Court must exercise caution in awarding fees to a prevailing defendant in
11 order to avoid discouraging legitimate suits that might not be "air tight". Christiansburg
12 Garment Co v. EEOC 434 U.S. 412, 421-422 (1978). See also, EEOC v. Consolidated
13 Services Sys. 30 F. 3d 58,59 (7th Cir. 1994). These cases suggest that the "frivolous"
14 standard for the application of Rule 11 sanctions is more stringent than "not
15 substantially justified".   This is the reasoning even in cases where the plaintiff
16 ultimately did not prevail at trial.

17     Courts are loathe to engage in post hoc reasoning, even in cases where plaintiff
18 did not prevail in by concluding that plaintiff's action must have been unreasonable or
19 without foundation.  Forsberg v. Northwest Bell Tel Co. 840 F. 2d 1409, 1422 (9th Cir.
20 1988) applied the "frivolous, unreasonable or without foundation" standard to a requests
21 for sanctions motion under Rule 11.

22     The claims filed by Plaintiff Hospital are neither frivolous, unreasonable or
23 without foundation. There has been no evidence to suggest the contrary. Defendant's
24 solitary but erroneous misinterpretation of contract language in multiple documents, in
25 the absence of any deposition testimony or other discovery, hardly establishes that filing
26 of the complaint, in its entirety was and has been ipso facto "frivolous", unreasonable,
27 or without foundation.

28 ///

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

## V.   <u>RULE 11 IS NOT INTENDED TO "CHILL" CREATIVE ADVOCACY</u>

An Improper Motion for Rule 11 sanctions, such as this, is itself sanctionable under the law.  Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. *Greenberg v. Sala* (9th Cir. 1987) 822 F2d 882, 887.

Defendant's threats of what are essentially "Hardball" sanctions under Rule 11 are out of line where the other side's position is plausible (even if it is incorrect). Seeking sanctions under such circumstances is itself sanctionable conduct: "The use of Rule 11 has unfortunately become part of the so-called 'hardball' litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct." *Gaiardo v. Ethyl Corp.* (3rd Cir. 1987) 835 F2d 479, 485.

A *groundless motion for sanctions* is itself sanctionable under Rule 11. *Bond v. American Medical Ass'n* (ND IL 1991) 764 F.Supp. 122, 126, fn. 3; See also, *Alliance to End Repression v. Chicago* (7th Cir. 1990) 899 F2d 582, 583—"hair-trigger" sanctions motions are sanctionable.

Plaintiff Hospital maintains that the defendant's motion for sanctions under Rule 11 motion is itself subject to sanctions under Rule 11 as being nothing other or more than a "hardball" tactic to avoid paying the Plaintiff Hospital's claim.

Rule 11 permits sanctions are applicable only where the "pleading, motion or other paper" itself is frivolous, not the arguments in support of it: "In short, the fact that one argument or sub-argument in support of an *otherwise valid* motion, pleading or other paper is unmeritorious does not warrant a finding that the motion or pleading is frivolous or that the Rule has been violated." *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F2d at 1540–1541 .

**There exists a policy of restraint in awarding sanctions generally.** Because of the potentially chilling effect on innovative lawyering, sanctions are reserved "for the rare and exceptional case where the action is *clearly* frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers*

*Pension Trust v. A–C Co.* (9th Cir.1988) 859 F2d 1336, 1344. The rationale is that "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution. Such sanctions can have an unintended detrimental impact on an attorney's career and personal well-being." *Conn v. Borjorquez* (9th Cir. 1992) 967 F2d 1418, 1421.

When a court examines a motion for sanctions, **it must resolve all doubts in favor of the signer of the pleading or paper.** This is required as the court must determine when the argument "turns from merely 'losing' to losing *and* sanctionable." *Associated Indem. Corp. v. Fairchild Industries, Inc.* (2nd Cir. 1992) 961 F2d 32, 34.

## VI.   CONCLUSION

Defendant's motion should be summarily denied on substantive grounds. There is no showing that the complaint was at the time filed, or at any other time, frivolous, was brought for any improper purpose or that it was or is objectively unreasonable. For these and the reasons cited above, this Court should deny Defendant's Rule 11 motion without additional waste of the court's time or the parties' resources. As the Advocacy Committee Notes to Rule 11 expressly states, "the Court should not ordinarily have to explain its denial of a motion for sanctions."   FRCP 11 Advisory Committee Note (1993).   Plaintiff Hospital requests that the Court impose appropriate sanctions and attorneys fees against the Defendant moving party.

DATED:  February 17, 2011                       HELTON LAW GROUP, P.C.

                                                By:  _____
                                                     CARRIE S. McLAIN
                                                     MARK S. HENNINGS
                                                     Attorneys for Plaintiffs
                                                     DOCTORS MEDICAL CENTER OF
                                                     MODESTO, INC.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

# PROOF OF SERVICE

*This document is printed on recycled paper*

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 401 E. Ocean Boulevard, Suite 1010, Long Beach, California 90802.

On February 17, 2011, I served the foregoing document described as **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS** as follows:

John M. Sorich, Esq.                     Attorney for Defendant,
S. Christopher Yoo, Esq.                 PRINCIPAL LIFE INSURANCE
Adorno, Yoss, Alvarado & Smith           COMPANY
1 MacArthur Place, Suite 200
Santa Ana, CA 92707


_____   **BY MAIL**
I caused such envelope to be deposited in the mail at Long Beach, California. The envelope was mailed with postage thereon fully prepaid.

__X__   **BY EMAIL**
I caused such documents to be served via electronic transmittal to the office of the addressee herein describe via the Court's Electronic Case Filing System

_____   **BY PERSONAL SERVICE**
I caused the foregoing document to be personally served on the interested parties herein described.

I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on February 17, 2011, at Long Beach, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

MARISA N. PITTS

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS