1

2

3

4

5

6

7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 DOCTORS MEDICAL CENTER OF                    CASE NO. CV-F-10-452 LJO SKO
MODESTO, INC.,

12
                        Plaintiff,            **ORDER ON DEFENDANT'S MOTION FOR**
13                                            **SANCTIONS** (Doc. 19, 22)
        vs.
14

15 PRINCIPAL LIFE INSURANCE CO.,

16                      Defendant.

17
_____ /
18

19                          I<small>NTRODUCTION</small>

20        Defendant Principle Life Insurance Co. ("Principal Life") moves for sanctions pursuant to Fed.

21 R. Civ. P. ("Rule") 11 in the form of  attorneys fees and other "appropriate non-monetary directives to

22 Plaintiff's counsel to deter future violations."  Principal Life asserts that this action, filed by plaintiff

23 Doctors Medical Center of Modesto, Inc. ("Doctors Medical") is baseless, both legally and factually.

24 In response, Doctors Medical disputes that this action is frivolous and baseless, and attaches evidence

25 to support the allegations of the complaint.  Having considered the parties' arguments, and the

26 documents submitted to support the parties' positions, this Court finds that Principal Life has failed to

27 establish that Doctors Medical's complaint violates Rule 11.  Accordingly, Principal Life's motion for

28 Rule 11 sanctions is DENIED.

                                          1

1

**B**ACKGROUND

2

**Doctors Medical's Allegations and Claims**

3   This is an action by Doctors Medical to recover payment for medical services provided to four

4   patients.  Doctors Medical alleges that Principal Life underpaid Doctors Medical a total amount of

5   $161,562.42.  Doctors Medical seeks to recover the amount of the alleged underpayment and 15% per

6   annum interest.

7   Doctors Medical asserts a total of 16 claims against Principal Life.  As to each of the four

8   patients, Doctors Medical asserts the following causes of action against Principal Life: (1) breach of

9   written contract; (2) breach of implied contract; (3) negligent misrepresentation; and (4) quantum meruit.

10  Doctors Medical's claims are based on the following allegations, contained in the complaint:

11  On July 1, 2008, Doctors Medical entered into an MPI Participating Facility Agreement ("MPI

12  Agreement") to provide medical care at reduced rates to participants of MPI's client's program.

13  Principal Life is a client of the MPI program, as defined by the MPI Agreement.  The purpose of the MPI

14  Agreement is for Doctors Medical to provide medical services to participant's in Principal Life's

15  program, and for Principal Life to pay Doctors Medical for such medical service in accordance with the

16  terms of the MPI Agreement.  Pursuant to the MPI Agreement, Doctors Medical will receive a

17  discounted rate for medical services.

18  Doctors Medical submitted its claim to Principal Life for Patient 1, with total charges in the

19  amount of $116,772.52 pursuant to the rates set forth in the MPI Agreement.  Doctors Medical alleges

20  that Principal Life underpaid this claim in the amount of $102,216.03.  Although Doctors Medical

21  appealed the claim and requested further payment, Principal Life upheld its payment determination.

22  Doctors Medical submitted a claim to Principal Life for Patient 2, with total charges of

23  $39,653.71.  Principal Life underpaid Doctors Medical in the amount of $34,558.68.  Doctors Medical

24  unsuccessfully appealed that claim decision as well.

25  As to Patient 3, Doctors Medical submitted a claim in the amount of $16,782.56, pursuant to the

26  rates set forth in the MPI Agreement.  Principal Life breached the agreement by adjusting the payment

27  incorrectly, and underpaying the claim in the amount of $6,586.99.  Principal Life upheld its payment

28  determination and refused to provide further payment as required by the MPI Agreement.

2

1    Doctors Medical provided medical services to Patient 4 in the amount of $21,234.66 and

2    submitted a claim in this amount to Principal Life.  Principal Life again underpaid the claim by

3    $18,200.72.  Principal Life refused to make further payments on this claim.

4    All patients were treated in 2008.  Prior to providing the treatment, Doctors Medical notified

5    Principal Life that its insured was to receive necessary care and treatment at Doctors Medical, and

6    verified each patient's insurance benefits.  Principal Life authorized the services, and Doctors Medical

7    received authorization numbers to provide the medically-necessary services to each patient.  Although

8    Principal Life authorized the treatments, and Doctors Medical performed its implied contract by

9    performing the medical services, Principal Life breached its implied contract by failing to pay for the

10   medical services rendered.   Moreover, Doctors Medical alleges that Principal Life's agents

11   misrepresented that Principal Life would pay for the medical services Doctors Medical provided.

12                    **Principal Life's Claims in the Rule 11 Motion**

13   Principal Life contends that this action to recover medical services is "completely frivolous,"

14   because it is based on a contract between Doctors Medical and Aetna Health of California, Inc., Aetna

15   Health Management, Inc.("Aetna"), and their affiliates ("PPO Agreement").[1]  Principal Life argues that

16   based on the PPO Agreement, Doctors Medical agreed to participate in the Aetna Signature

17   Administrators PPO Network (the "ASA Network").  The patients who received the services rendered

18   by Doctors Medical were members of the ASA Network.[2]  Principal Life contends that it is merely a

19   claims administrator, but has confirmed with Aetna that the claims were paid in accordance to the

20   applicable fee schedule in the PPO Agreement regarding ASA Network patients.  Principal Life argues

21   that "without factual support or plausible explanation, Plaintiff now claims that Aetna's ASA Network

22   is somehow exempt from its contract with Aetna."  Principal Life concludes that Doctors Medical's

23   "continued advancement of this action in the face of irrefutable proof that the claims were properly paid

24   is exactly the type of conduct that warrants the imposition of Rule 11 sanction."

25   _____

26        [1]Principal Life attaches as "Exhibit A" a series of agreements, fee schedules, some with written notes in the margins,
     totaling more than 60 pages.  Principal Life refers generally to these documents as the PPO Agreement and "Exhibit A."

27

28        [2]Principal Life submits redacted copies of the patient's medical cards, indicating that each patient was a member
     of the ASA Network.

1
**Doctors Medical's Response**

2       Doctors Medical maintains that this action is meritorious.  Doctors Medical reiterates that its

3 contract claims are based on the MPI Agreement–not the PPO Agreement–and argues that Principal Life

4 is a party to that agreement.  Moreover, Doctors Medical refutes the notion that the ASA Network was

5 applicable at the time the services were rendered to the patients.  Doctors Medical contends that the PPO

6 Agreement in effect at the time of the services were rendered makes no direct reference to ASA as a

7 participating product or as an Aetna affiliate.  Doctors Medical also asserts that ASA is not listed in

8 Aetna's 10-K filings for either 2008, when the claims arose, or 2010 as a subsidiary.  Doctors Medical

9 points out that according to Principal Life's Exhibit A, the only reference to the ASA Network is made

10 in a January 1, 2010 amendment to the PPO Agreement.  The 2010 amendment added a specific

11 provision regarding the ASA Network products and the rates payable for those products.  Because the

12 2010 amendment post-dates the dates of service of the claims at issue, Doctors Medical submits, the

13 ASA Network fee schedule is inapplicable.

14       To further support its claims, Doctors Medical submits three exhibits.  First, Doctors Medical

15 attaches a declaration by Doctors Medical's Assistant Vice President for Managed Care Peg Wallin ("Ms

16 Wallin").  According to Ms. Wallin, "[t]here was no Aetna Signature Administrators discount rate in

17 affect at Doctors Medical Center of Modesto, Inc. in the year 2008." Wallin Decl., ¶3 (Opp., Exh. C).

18 Doctors Medical further submits appeals letters sent to Principal Life to dispute the payment for Patients

19 1 and 2.  In the first letter, dated April 7, 2009, Doctors Medical appeals specialist Ana Baltazar writes:

20 "Doctors Medical Center of Modesto does not have a [sic] Aetna Signature Product [sic] we have our

21 own separate agreement with Aetna." Opp., Exh. A.   The letter specifies that the separate agreement

22 to be the MPI Agreement. *Id*.  In the second letter, dated May 4, 2009, Doctor Medical appeals specialist

23 Molly Ray writes: "Doctors Medical Center of Modesto does not have an Aetna Signature product."

24 Opp., Exh. B.  The second letter also refers to the MPI Agreement as the applicable agreement between

25 the parties. *Id*.

26
**Procedural History**

27       Doctors Medical initiated this action on February 1, 2010 in the Superior Court of California,

28 County of Stanislaus.  Principal Life removed this action on March 12, 2010, and filed its answer to the

4

1  complaint on April 2, 2010.  On January 11, 2011, Principal Life moved for Rule 11 sanctions.  Doctors

2  Medical responded on February 17, 2011.  This Court finds this motion suitable for a decision without

3  a hearing, VACATES the March 3, 2011 hearing on this motion, and issues the following order.

### STANDARD OF REVIEW

5  Principal Life moves for sanctions pursuant to Rule 11, which provides:

> By presenting to the court a pleading...an attorney...certifies to the best of that
> person's knowledge, information, and belief, formed after an inquiry reasonable under
> the circumstances:
> (2) the claims, defendants, and other legal contentions are warranted by existing
> law or by a nonfrivolous argument...;
> (3) the factual contentions have evidentiary support or, if specifically so specified,
> will likely have evidentiary support after a reasonable opportunity for further
> investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if
> specifically so identified, are reasonably based on believe or a lack of information.

12  Thus, Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and

13  have determined that any papers filed with the court are grounded in fact, legally tenable, and "not

14  interposed for any improper purpose." *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 393 (1990).

15  This Court may impose sanctions on an attorney if a pleading is either legally frivolous, factually

16  misleading, or both. *Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d 1146, 1153 (9th Cir. 2002);

17  Rule 11(b)(2)(3); (c).

18  This Court reviews an attorney's conduct under a standard of "objective reasonableness" under

19  the circumstances. *Truesdell*, 293 F.3d at 1153.  The Court reviews the complaint and circumstances

20  surrounding the filing of the complaint to determine whether a "reasonable lawyer would have certified

21  that the claims raised in Plaintiff's complaint were warranted by existing law or by a nonfrivolous

22  argument for the extension, modification or reversal of existing law" or whether a reasonable lawyer

23  would have certified that the factual contentions have evidentiary support. *Id.*

24  When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct

25  a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an

26  objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before

27  signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quoted in *Holgate

28  v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005)).

1

## DISCUSSION

2

### Frivolousness

3   Principal Life characterizes this action as "completely frivolous."  Principal Life faults Doctors

4   Medical for pursuing this action despite "irrefutable proof" that the claims were properly paid pursuant

5   to the ASA Network pay schedule.  As to the breach of contract causes of action, Principal Life

6   maintains that it is not a party to a contract with Doctors Medical.  Therefore, a breach of contract claim

7   against it baseless.  In addition, Principal Life contends that the PPO Agreement renders the implied

8   contract and quantum meruit claims baseless.  Principal Life further argues that Doctors Medical fails

9   to state a claim for negligent misrepresentation.  Finally, Principal Life asserts that Doctors Medical's

10  counsel failed to conduct a reasonable inquiry before filing and continuing to pursue this action,

11  warranting Rule 11 sanctions.

12  "[S]anctions must be imposed on the signor of a paper if ... the paper is 'frivolous.'" *Townsend*

13  *v. Holman Consulting Corp.*, 914 F.2d 1136, 1140 (9th Cir. 1990) (en banc).  A complaint is "frivolous"

14  when it is "*both* baseless *and* made without a reasonable and competent inquiry." *Moore v. Keegan*

15  *Mgmt. Co.*, 78 F.3d 431, 434 (9th Cir. 1996) (quoted in *Holgate*, 425 F.3d at 625) (emphasis in original).

16  For the following reasons, this Court finds that Principal Life has failed to establish that the complaint

17  was frivolous.

18  The documents submitted by Doctors Medical support its position that the complaint against

19  Principal Life was "objectively reasonable under the circumstances."[3]  While Principal Life argues that

20  the PPO Agreement provides "irrefutable proof" that the ASA Network claim rates were applicable at

21  the time the services were rendered–and that Principal Life correctly paid the claims pursuant to the ASA

22  Network fee schedule–Doctors Medical presents evidence that calls into question this "irrefutable

23  proof."  For example, Doctors Medical points out that the ASA Network language did not appear in the

24  PPO Agreement until a 2010 amendment–after the patient services were rendered in 2008.  Two Doctors

25  Medical appeals specialists asserted in 2009 that no ASA Network agreement existed between Doctors

26  Medical and Aetna.  In her February 16, 2011 declaration, Ms. Wallin maintains that no ASA Network

27

28      [3]This Court makes no finding as to the merits of the asserted claims.

1   discount rate was in effect at Doctors Medical in 2008.  Under these circumstances, the claims against

2   Principal Life for underpayment were not baseless. *See, Cunningham v. County of Los Angeles*, 869 F.2d

3   427 (9th Cir. 1988), *reh'g denied*, reprinted, 879 F.2d 481 (9th Cir. 1988), *cert. denied*, 493 U.S. 1035

4   (1990) (Rule 11 sanctions not warranted where plaintiff's claims were not frivolous at time they were

5   filed, fact that some claims were later found lacking in evidentiary foundation is irrelevant to Rule 11

6   inquiry).

7         Moreover, Doctors Medical presents evidence that its counsel made a reasonable inquiry as to

8   the allegations contained in the complaint.  The factual allegations of the complaint contain specific

9   dates, authorization numbers from Principal Life, and dates and details of the appeals that Doctors

10  Medical made to Principal Life regarding the patients' disputed claims.  Reference to the appeals letters

11  in the complaint, including the assertion that no ASA agreement existed at the time the medical services

12  were provided, supports Doctors Medical's position that counsel investigated the claims prior to filing

13  the complaint. Moreover, the complaint relies on the MPI Agreement, not the PPO Agreement.  Doctors

14  Medical submits evidence that, at the least, raises as issue of fact as to whether the ASA Network fee

15  schedule was in effect at the time the services were rendered.  Based on the circumstances surrounding

16  the filing of the complaint and exhibits submitted, this Court is satisfied that counsel made a reasonable

17  inquiry prior to filing and signing the complaint in this action.

18        Principal Life fails to establish that the complaint was frivolous.  Doctors Medical submits

19  evidence supporting its position that its claims against Principal Life are colorable, based on some

20  evidence, and were made after reasonable inquiry.  Doctor Medical maintains that the MPI Agreement

21  was operative, that Principal Life was a party to that contract, and that Principal Life's agents authorized

22  payments, misrepresented authorization of payments, and then underpaid the claims.  Pursuant to the

23  documents presented in opposition to this motion, there is legal and factual support for those claims.

24  *See, Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466 (9th Cir. 1987),

25  *cert. denied*, 484 U.S. 1006 (1988) (Rule 11 sanctions unwarranted where some circumstantial evidence,

26  however weak, did exist to support plaintiffs' claims).  By contrast, Principal Life's Rule 11 motion,

27  based solely on the PPO Agreement, does not establish by "irrefutable proof" that Doctor Medical's

28  claims are legally and factually baseless.   Accordingly, this Rule 11 motion is denied.

**<u>Other Arguments</u>**

In addition to the asserted frivolity of the complaint, Principal Life contends that Rule 11 sanctions are warranted for other reasons.  This Court considers and rejects these arguments below.

Principal Life improperly faults Doctors Medical for discovery conduct, including discovery responses.  Rule 11(d) makes clear, however, that this "rule does not apply to disclosures and discovery requests, responses, objections, and motion under Rule 26 through 37."  Principal Life has a pending discovery motion ,which includes a request for sanctions.  These sanctions-related arguments are best-suited for the discovery motion.  Accordingly, Principal Life's arguments related to discovery are inapposite.

Similarly, Principal Life's continuing duty arguments fail.  Principal Life argues that this Court should impose Rule 11 sanctions based on Doctors Medical's failure to dismiss this case once presented with the PPO Agreement.  Principal Life's Rule 11 arguments, however, rely on the complaint.  Rule 11 sanctions are improper where a plaintiff files a complaint that was objectively reasonable under the circumstances, even if at some point it becomes clear that the defendant was not at fault. *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1121 (9th Cir. 1991).  Rule 11 "does not provide sanctions for failing to prepare and sign a document." *Id*.  Principal Life does not suggest that Doctors Medical has filed and signed an amended complaint re-alleging facts it knows to be untrue.  *C.f., Townsend*, 914 F.2d at 1144 (first amended complaint filed without reasonable inquiry where first amended complaint was filed after plaintiffs submitted affidavits that negated the factual allegations contained in the first amended complaint).  Because of the absence of further signed documents filed with the Court, the continuing duty arguments are unpersuasive to impose Rule 11 sanctions.

Finally, Principal Life's improper purpose argument is unsupported.  This Court may impose Rule 11 sanctions if a paper is filed for an improper purpose.  *See*, Fed. R. Civ. P. 11(b)(1)-(2); *Townsend*, 929 F.2d at 1362.  At the end of its memorandum in support of the instant motion, and in an unrelated section, Principal Life's counsel charges Doctors Medical's counsel with filing and maintaining this action for an improper purpose: "Plaintiff's counsel's obfuscation and complete failure to prosecute this case suggests that Plaintiff's counsel was aware that the PPO Agreement controls payment of the claims at issue, but chose to proceed against Principal Life to achieve some sort of

nuisance settlement." To the extent this statement faults Doctors Medical with failure to prosecute this action, Principal Life must file an appropriate motion separately. To the extent Principal Life contends that this action was filed for an improper purpose, Principal Life submits no evidence to support these assertions. Accordingly, Principal Life's Rule 11 motion for sanctions based on allegations of improper purpose is denied.

## CONCLUSION

For the foregoing reasons, this Court DENIES Principal Life's Rule 11 motion. The March 3, 2011 hearing on this motion is VACATED.

IT IS SO ORDERED.

**Dated:   February 22, 2011**          **/s/ Lawrence J. O'Neill**
                         UNITED STATES DISTRICT JUDGE

9