# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOCTORS MEDICAL CENTER OF MODESTO, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>PRINCIPAL LIFE INSURANCE COMPANY, and DOES 1 through 25, inclusive,<br><br>Defendant. | CASE NO. 1:10-cv-00452-LJO-SKO<br><br>**ORDER ON DEFENDANT'S "MOTION FOR DISCOVERY"**<br><br>(Docket No. 20) |

## I. INTRODUCTION

Plaintiff Doctors Medical Center of Modesto, Inc. ("DMC" or "Plaintiff") filed suit against Defendant Principal Life Insurance Company ("Principal" or "Defendant") in Stanislaus County Superior Court alleging claims for breach of contract, breach of an implied contract, negligent misrepresentation, and quantum meruit. (Doc. 1 at 8-27.) According to Plaintiff's complaint, DMC entered into an agreement with Principal to provide medical services at a discounted rate to patients who were participants in a program offered by Principal. (Doc. 1 at 9, ¶¶ 6-7.) DMC provided medical services to four participants of Principal's plan, but Principal failed to pay for the full amount of the services rendered to these participant patients in violation of the agreement between DMC and Principal. (Doc. 1, 11-15, ¶¶ 22-58.) Principal removed the action from Stanislaus

County Superior Court on March 12, 2010.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On October 14, 2010, Principal served DMC with a First Request for Admissions numbered 1 through 22. (Doc. 20-1, Exhibit A.) Responses to the Request for Admissions ("RFAs") were due on November 18, 2010. On November 18, 2010, one of DMC's counsel, Mr. Greg Lehman, contacted Principal's counsel to request an extension of time to respond to the admissions; Principal's counsel agreed to extend the time to respond until Tuesday, November 23, 2010. (Doc. 20-1, Exhibit B; Doc. 26-1, ¶ 2.)

On November 24, 2010, DMC served its responses to Principal's RFAs. (*See* Doc. 20-1, Exhibit C; *see also* Doc. 26-1, ¶¶ 2-3 ("Defense attorney Christopher Yoo granted an extension until 11/23/2010 to respond to the requests for admissions. The Helton Law Group mailed the legally and factually sufficient responses I drafted to the requests for admissions on 11/24/2010, one day late as I was still waiting for the receipt of the verification from our client.").)

Upon review of DMC's responses, Principal's counsel, apparently dissatisfied with the sufficiency of the responses, contacted DMC's counsel on December 10, 2010, regarding RFAs numbers 5 through 8. (Doc. 20-1, ¶ 5.) According to Principal, DMC's counsel agreed to withdraw the objections and supplement the responses. (Doc. 20-1, ¶ 5.) Despite repeated negotiations between the parties' attorneys, Principal maintains that DMC has never supplemented its responses as agreed. (Doc. 20-1, ¶ 7.) Principal requests that the Court deem RFAs 5 through 8 admitted because DMC failed to provide substantive responses. (Doc. 20-1, ¶ 12.)

DMC asserts that it unequivocally denied each of the RFAs and that none of its responses is insufficient. (*See* Doc. 26, 3:17-18 ("Plaintiff unequivocally denied RFAs 1-4, 5-8 (the only ones sought to be admitted in defendant's motion) and 9-22.").) DMC argues that Principal does not bring the present motion in good faith because it is not seeking to deem all of the RFAs admitted, only numbers 5 through 8. (Doc. 26, 4:3-8.) DMC points out that Principal has never asserted that the responses to the RFAs were late or that they were deemed admitted. DMC asserts this is evidenced by the fact that Principal's counsel continued to ask DMC's counsel for additional responses to RFAs 5 through 8 after the RFAs were served.

2

### III.   DISCUSSION

**A.   Legal Standard**

The Federal Rules of Civil Procedure provide the following with regard to the time to respond to Requests for Admission:

> A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.  A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

Fed. R. Civ. P. 36(a)(3).  Accordingly, if the 30th day is a weekend or a legal holiday, the response is not due until the next business day.  Fed. R. Civ. P. 6(a)(3).  An additional three days are allowed for responses where the Requests for Admission are served by mail or other applicable means under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Fed. R. Civ. P. 6(d).

The failure to timely respond to Requests for Admission results in *automatic admission* of the matters requested.  Fed. R. Civ. P. 36(a)(3).  "No motion to establish admissions is needed because Federal Rule of Civil Procedure 36(a) is self executing." *Fed. Trade Comm'n v. Medicor LLC*, 217 F. Supp. 2d 1048, 1053 (C.D. Cal. 2002); *Garcia v. City of Ceres*, No. CV F. 08-1720 LJO SKO, 2010 WL 2490917, at *4 n.5 (E.D. Cal. June 16, 2010).  Once admitted, the matter is conclusively established "unless the court, on motion, permits the admission to be withdrawn or amended."  Fed. R. Civ. P. 36(b).

Where responses have been timely served but are deficient, the requesting party may move for an order to determine the sufficiency of the response.  Fed. R. Civ. P. 36(a)(6).  "On finding that [a response] does not comply with this rule, the court may order either that the matter is admitted or that an amended [response] be served."  *Id.*

Once admitted due to (1) a complete failure to respond, (2) untimeliness, or (3) insufficiency, an admission cannot be amended or withdrawn except by leave of court.  Fed. R. Civ. P. 36(b); *999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985).

**B.   Untimely Responses to Requests for Admissions**

Although the parties dispute the sufficiency of DMC's responses to RFAs numbers 5 through 8, the parties agree that the responses to the RFAs were served late.  The responses were initially due

30 days from the date of service of the requests. Fed. R. Civ. P. 36(a)(3). As the RFAs were served on October 14, 2010 (*see* Doc. 20-1, Exhibit A at 13), the responses were due on Saturday, November 13, 2010. Because the response deadline was a Saturday, the responses were then due on the next business day, which was Monday, November 15, 2010. Fed. R. Civ. P. 6(a)(3). Additionally, because the RFAs were served by mail (*see* Doc. 20-1, Exhibit A), three additional days were added resulting in a response deadline of November 18, 2010. Fed. R. Civ. P. 5(b)(2)(C), 6(d).

On November 18, 2010, the parties stipulated that DMC would have until Tuesday, November 23, 2010, to serve its responses. (*See* Doc. 20-1, Exhibit B.) Despite that stipulation, the responses were served on November 24, 2010. (Doc. 20-1, Exhibit C at 28; Doc. 26-1, ¶ 3 ("The Helton Law Group mailed the legally and factually sufficient responses I drafted to the requests for admissions on [November 24, 2010,] one day late as I was still waiting for the receipt of the verification from our client.").) The Court finds that DMC's responses to Principal's October 14, 2010, RFAs were untimely.

Despite the self-executing nature of Rule 36 with regard to the automatic admission of untimely responses, the Ninth Circuit has long recognized the district court's discretion to permit late responses to requests for admission. *See, e.g., French v. United States*, 416 F.2d 1149, 1152 (9th Cir. 1968) ("A trial judge has discretion to permit a late response to a request for admissions made pursuant to [Rule 36], and thus relieve a party of apparent default.") The language of Rule 36(a) provides a court with discretion to extend the time for responding to requests for admissions, even after the time to respond has expired.[1] Fed. R. Civ. P. 36(a)(3) ("A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.").

Nevertheless, the Court is hesitant to exercise such discretion here. The Federal Rules of Civil Procedure are not suggestions; they are the rules of practice in federal court. Attorneys

---

[1] *See, e.g., United States v. Lake Killarney Apartments, Inc.*, 443 F.2d 1170 (5th Cir. 1971) (per curiam) (government allowed to serve untimely answers to requests for admission not an abuse of discretion); *F.C., III v. Cnty. of L.A.*, No. CV 10-169 CAS (RZx), 2010 WL 5157339, at *4 (C.D. Cal. Dec. 13, 2010) (district court "construes plaintiffs' opposition [to the motion for summary judgment] as a motion to withdraw or amend their admissions pursuant to Fed. R. Civ. P. 36(b)); *A. Farber & Partners, Inc. v. Garber*, 257 F.R.D. 250, 257-58 (C.D. Cal. 2006) (district court exercises discretion to relieve party of deemed admitted effect of untimely responses to requests for admission).

admitted to practice have a duty of competence to their clients to understand and appreciate the applicable rules, including those particular to federal court practice. The Court's concern is that exercising discretion to relieve DMC from these admissions undercuts the self-executing nature of Rule 36 and tacitly implies that a party's or its attorney's failure to abide by the rules of practice is of little or no consequence.

On the other hand, discretion also requires the Court to examine competing factors and interests. The Court must weigh the public policy favoring the disposition of cases on their merits rather than on technical violations of procedural rules, consider the scope and purpose of the Federal Rules of Civil Procedure, and assess the particular circumstances presented. DMC asserts that if the RFAs are deemed admitted the result is essentially a case-terminating sanction as the RFAs, especially numbers 5 through 8, "eviscerate" Plaintiff's case and will prevent the matter from being decided on the merits. (*See, e.g.,* Doc. 26, 6:27-28.) The Ninth Circuit has repeatedly held, in a variety of procedural contexts, that the public policy favoring disposition of cases on their merits strongly counsels against dismissal of a case or sanctions that are ultimately case-terminating. *See, e.g., In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006).

Further, the Rules of Civil Procedure explicitly counsel that the rules are to "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Here, the responses were only days late and appear to be due to poor planning on the part of counsel for DMC.[2] Allowing a technical violation of this nature to drive the resolution of the matter essentially deprives DMC of a merits-based decision. Construing Rule 36 in this manner would not comport with the scope and purpose of the Rules.

Beyond this, even assuming that DMC is incorrect in its assertion that the admissions are case-terminating, the circumstances of this case weigh in favor relieving DMC of its late responses. The tardiness of the responses is minimal, and Principal has not shown how it was prejudiced by this delay. Additionally, Principal continued to seek supplemental responses to some of the RFAs – and

---

[2] The unverified responses were served one day late on November 24, 2010. DMC's verification of the responses was not obtained until November 29, 2010, and the responses were served again via email on December 1, 2010.

extended additional time to DMC to provide such responses – despite that the original responses were untimely. Allowing DMC additional time to provide amended responses to the RFAs can be construed as an agreement to waive the original untimeliness. For these reasons, in its discretion, the Court declines to find that the tardiness of DMC's responses is a sufficient ground to grant Principal's motion that all the RFAs be deemed admitted. *See Garber*, 237 F.R.D. at 257 (citing *Nguyen v. CNA Corp.*, 44 F.3d 234, 242-43 (4th Cir. 1995) (district court did not abuse discretion in refusing to deem admitted requests for admission when responses were one day late, given minimal delay and circumstances surrounding delay)).

**C.     Rule 36(a)(6) Motion Regarding the Sufficiency of Responses to RFAs Nos. 5 -8**

Principal presents additional argument that the responses to RFAs 5 through 8 are insufficient and should be deemed admitted pursuant to Rule 36(a)(6).

**1.     Disputed RFAs and Responses**

These relevant and disputed RFA responses are as follows:

**REQUEST FOR ADMISSION NO. 5**:

Admit that at the time he/she received services at DMC Modesto, Patient 1 was not a "participant of MPI's Client's Program" as referenced in paragraph 6 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Objection. This request is *vague and ambiguous, and is unintelligible as worded* with respect to the reference to Patient 1 being a "participants [sic] of MPI's Client's Program." As the complaint is worded at Paragraph 6, there is no reference to any Patient being a participant in "MPI's Client's Program."

Responding party lacks sufficient information to admit or deny this request and, therefore, must deny the request. Responding party's investigation and discovery are ongoing to determine the facts relating to this request.

**REQUEST FOR ADMISSION NO 6:**

Admit that at the time he/she received services at DMC Modesto, Patient 2 was not a "participant of MPI's Client's Program" as referenced in paragraph 6 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6**:

Objection. This request is *vague and ambiguous, and is unintelligible as worded* with respect to the reference to Patient 2 being a "participants [sic] of MPI's Client's Program." As the complaint is worded at Paragraph 6, there is no reference to any Patient being a participant in "MPI's Client's Program."

6

Responding party lacks sufficient information to admit or deny this request, and, therefore, must deny the request. Responding party's investigation and discovery are ongoing to determine the facts relating to this request.

**REQUEST FOR ADMISSION NO. 7**:

Admit that at the time he/she received services at DMC Modesto, Patient 3 was not a "participant of MPI's Client's Program" as referenced in paragraph 6 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7**:

Objection. This request is *vague and ambiguous, and is unintelligible as worded* with respect to the reference to Patient 3 being a "participants [sic] of MPI's Client's Program." As the complaint is worded at Paragraph 6, there is no reference to any Patient being a participant in "MPI's Client's Program."

Responding party lacks sufficient information to admit or deny this request and, therefore, must deny the request. Responding party's investigation and discovery is ongoing to determine the facts relating to this request.

**REQUEST FOR ADMISSION NO. 8**:

Admit that at the time he/she received services at DMC Modesto, Patient 4 was not a "participant of MPI's Client's Program" as referenced in paragraph 6 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8**:

Objection. This request is *vague and ambiguous, and is unintelligible as worded* with respect to the reference to Patient 4 being a "participants [sic] of MPI's Client's Program." As the complaint is worded at Paragraph 6, there is no reference to any Patient being a participant in "MPI's Client's Program."

Responding party lacks sufficient information to admit or deny this request and, therefore, must deny the request. Responding party's investigation and discovery is ongoing to determine the facts relating to this request.

**2.     Contentions of the Parties**

Principal contends that DMC's responses to these RFAs did not adequately admit or deny but instead were merely objections to the RFAs on the ground that they were vague and ambiguous. (Doc. 20, ¶ 6.) Principal asserts that it contacted DMC's counsel on December 10, 2010, regarding these responses and that DMC's counsel agreed to withdraw the objections and admit or deny RFAs 5 through 8. (Doc. 20, ¶ 7.) The parties conferred again on December 27, 2010, as DMC had not yet served amended responses to RFAs numbers 5 through 8. Ultimately the parties agreed that DMC would provide amended responses during the week of January 17, 2011, but DMC failed to

do so. (Doc. 20-1, Exhibit D.) Principal requests that the Court deem RFAs numbers 5 through 8 admitted because the responses to those RFAs are insufficient, and DMC failed to amend its responses, despite agreeing to do so.

DMC asserts that, despite its objection to RFAs numbers 5 through 8, these RFAs were denied "[c]iting a lack of sufficient information and belief." (Doc. 26, 4:15-16.) DMC contends that its denial, based on a lack of sufficient information and belief, was factually and legally sufficient. (Doc. 26, 4:16-18.)

### 3. Objection to the RFAs

Where the propounding party disputes the sufficiency of a response or an objection, it may move for a determination from the court on the issue:

> The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served . . . .

Fed. R. Civ. P. 36(a)(6).

DMC objected to Principal's RFAs numbers 5 through 8 on the ground that these RFAs are vague and ambiguous. In its complaint, DMC asserts that it provided medical services to four patients, who are alleged to be participants in Principal's Program, for which it did not receive adequate payment from Principal. The relevant allegations in the complaint are provided as follows:

> 6. On or about July 1, 2008, DMC Modesto entered into the MPI[3] Participating Facility Agreement ("DMC Modesto Agreement") to provide medical care at reduced rates to Participants of MPI's Client's Program. DMC Modesto is informed and believes Principal is a Client, as defined by the Agreement. The sole purpose of this Agreement was for DMC Modesto to provide medical services to any Participants in Principal's Program in need of such medical services, and for Principal to pay DMC Modesto for such medical services rendered in accordance with the terms of the DMC Modesto Agreement.

With respect to each individual patient 1 through 4, the names of whom were withheld in the interests of privacy, DMC alleged the following:

> 9. At the time Patient 1 was admitted to DMC Modesto and throughout Patient 1's stay, the DMC Modesto Agreement was in place and Principal was specifically obligated to make payment in accordance with the terms. The

---

[3] The term "MPI" is not defined in the complaint.

>      DMC Modesto Agreement provides for various payment schedules and discounts depending upon the type of medical goods and services provided to Patient 1 by DMC Modesto.
>      . . . .
>
> 11.  From July 25, 2008[,] through July 28, 2008, DMC Modesto provided Patient 1, a Participant in Principal's Program, with treatment for medically necessary and physician ordered medical services.
>      . . . .
>
> 23.  At the time Patient 2 was admitted to DMC Modesto and throughout Patient 2's stay, the DMC Modesto Agreement was in place and Principal was specifically obligated to make payment in accordance with the terms. The DMC Modesto Agreement provides for various payment schedules and discounts depending upon the type of medical goods and services provided to Patient 2 by DMC Modesto.
>      . . . .
>
> 25.  From December 1, 2008[,] through December 3, 2008, DMC Modesto provided Patient 2, a Participant in Principal's Program, with treatment for medically necessary and physician ordered medical services.
>      . . . .
>
> 36.  At the time Patient 3 was admitted to DMC Modesto and throughout Patient 3's stay, the DMC Modesto Agreement was in place and Principal was specifically obligated to make payment in accordance with the terms. The DMC Modesto Agreement provides for various payment schedules and discounts depending upon the type of medical goods and services provided to Patient 3 by DMC Modesto.
>      . . . .
>
> 38.  From December 29, 2008[,] through December 30, 2008, DMC Modesto provided medically necessary and physician ordered medical services to Patient 3.
>      . . . .
>
> 48.  At the time Patient 4 was admitted to DMC Modesto and throughout Patient 4's stay, the DMC Modesto Agreement was in place and Principal was specifically obligated to make payment in accordance with the terms. The DMC Modesto Agreement provides for various payment schedules and discounts depending upon the type of medical goods and services provided to Patient 4 by DMC Modesto.
>      . . . .
>
> 50.  From August 31, 2008, through September 1, 2008, DMC Modesto provided medically necessary and physician ordered medical services to Patient 4.

(Doc. 1, 8-41, ¶¶ 9, 11, 25, 36, 38, 48, 50.)

As worded, the RFAs ask DMC to admit or deny that each patient at issue was not a participant in Principal's Program at the time DMC administered treatment. According to paragraph 6 of the complaint, Principal is alleged to be a "Client" of the "MPI Facility Agreement." In turn,

9

participants of a "Client's" Program are covered under the DMC Modesto Agreement. Thus, services rendered to Principal's program participants are asserted to come under the auspices of the DMC Modesto Agreement. The call of Principal's RFAs appears to be aimed at narrowing the issue of whether the patients that DMC asserts to have treated were actually participants of Principal's program at the time of treatment. This request does not appear to be overly vague or ambiguous such that an appropriate response cannot be formulated. Moreover, DMC has represented to the Court in its papers that, if admitted, these RFAs would be case-terminating. (*See* Doc. 28, 6:27-28 - 7:1 ("unilateral hand picked selection of requests for admission 5-8 being ordered deemed admitted would have the draconian effect of eviscerating the Plaintiff's case, in terms of admissions deemed admitted").) If DMC understands the call of the requests sufficiently to represent to the Court that any admission to such requests would be case-ending, then DMC demonstrates that the requests are not so vague or ambiguous that DMC cannot answer them. The Court finds that the RFAs are not impermissibly vague or ambiguous, and the objection on that ground is overruled.

**4. Sufficiency of Denial of RFAs Based on a Lack of Information**

Despite that DMC objected to RFAs numbers 5 through 8, it did provide an additional response denying the RFAs based on a lack of sufficient information. Principal challenges the sufficiency of this response. Pursuant to Rule 36(a)(4), an answer to an RFA may be predicated on a lack of knowledge or information as follows:

> The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

DMC's denial was predicated on a lack of sufficient information, but such an equivocal denial must be accompanied by an explanation of what reasonable efforts were made to procure sufficient information necessary to unequivocally respond to the RFA. *See Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1982) ("an evasive denial . . . may be deemed an admission").

Here, DMC did not set forth what efforts were made to conduct a reasonable inquiry to procure information necessary to respond to the RFA without equivocation. This is insufficient under Fed. R. Civ. P. 36(a)(6), particularly because DMC's counsel had not yet verified these

10

response with DMC prior to serving them.[4] Moreover, DMC agreed to amend its responses to these RFAs after conferring with Principal's counsel regarding the basis for DMC's objection and response to these RFAs. For these reasons, the Court finds that DMC must amend its responses to RFAs numbers 5 through 8. Such amended responses shall not simply restate a denial with equivocation based on a lack of information. If information to respond precisely is not available, counsel must diligently set forth what reasonable inquiry has been taken to uncover such information. In its discretion under Rule 36(a)(6), the Court orders that DMC shall serve amended responses to RFAs numbers 5 through 8, and **DMC shall ensure that such responses are received by Principal on or before March 9, 2011.**

### D.   DMC's Request for Monetary Sanctions

The Court finds that DMC's request for monetary sanctions against Principal in the form of costs and attorneys' fees is misplaced. (*See* Doc. 26, 7:17-21.) This is particularly so because DMC served its responses to the RFAs in an untimely manner. DMC has been relieved from its tardy responses and the deemed admitted effect purely by virtue of the Court's discretion – which was hesitantly exercised for the reasons set forth above. DMC's request for monetary sanctions is DENIED.

### E.   Rule 37 Sanctions

While the Court has declined to deem all DMC's tardy responses to Principal's RFAs admitted, the Court has particular concerns regarding the manner in which DMC responded to the RFAs and stalled in providing amended responses after agreeing to do so. DMC's counsel claimed

---

[4] The Ninth Circuit took up the issue of insufficient responses to admissions in *Asea, Inc.*, *supra*, and explained its holding as follows:

> We hold, therefore, that a response which fails to admit or deny a proper request for admission does not comply with the requirements of Rule 36(a) if the answer party has not, in fact, made "reasonable inquiry," or if information "readily obtainable" is sufficient to enable him to admit or deny the matter. A party requesting an admission may, if he feels these requirements have not been met, move to determine the sufficiency of the answer, to compel a proper response, or to have the matter ordered admitted. Although the district court should ordinarily first order an amended answer, and deem the matter admitted only if a sufficient answer is not timely filed, this determination, like most involved in the oversight of discovery is left to the sound discretion of the district judge.

669 F.2d at 1247.

that he was one day late serving DMC's responses to the RFAs because he was waiting for verification from his client, DMC. (Doc. 26-1, ¶ 3.) However, while the responses were served on November 24, 2010, via mail, no client verification accompanied those responses. (Doc. 20-1, Exhibit C.) The client verification was not obtained until five days later on November 29, 2010. (Doc. 28, Exhibit A.) The responses with the client verification were then apparently again served by DMC's counsel via email on December 1, 2010. (Doc. 28, Exhibit C.)

Additionally, contrary to DMC's assertion that it was never informed by Principal that its responses were late and deemed admitted (*see* Doc. 26, 5:3-6), Principal's counsel sent an email to DMC's counsel on November 30, 2010, stating that the RFAs were considered admitted.[5] (Doc. 28, Exhibit D.) Even assuming DMC believed it had a waiver or stipulation from Principal as to the untimeliness of the responses, DMC continued to drag its feet in amending its responses as it agreed – and, in fact, never provided amended responses. This is the type of conduct that unnecessarily drives up the expense of litigation and evidences a disregard for the rules of practice. While what would be tantamount to a case-terminating sanction such as deeming all the RFAs admitted is not appropriate for the reasons already stated, Principal is entitled to amended responses to RFAs numbers 5 through 8 because DMC's responses amount to evasive denials based on insufficient information. This is especially so considering DMC had not yet even verified these responses with its client before submitting them on November 24, 2010.

For these reasons, the Court finds that some apportionment of Principal's reasonable expenses in bringing the motion may be appropriate under Rule 37(a)(4)(C). Therefore, Principal shall file a declaration with supporting exhibits showing the costs and expenses of this motion on or before **March 9, 2011.** DMC shall have an opportunity to be heard regarding such apportionment of expenses by filing any objections on or before **March 9, 2011**. Thereafter, the Court will issue a separate order regarding any apportionment of Principal's expenses found to be appropriate.

---

[5] Why Principal continued to seek supplemental or amended answers to these RFAs from DMC after declaring that they were all admitted as tardy is somewhat puzzling (*see* Doc. 20-1, Exhibit D) and, as noted *supra*, may be construed as a waiver of the original untimeliness.

### IV. CONCLUSION

For all the foregoing reasons, the Court HEREBY ORDERS THAT:

1. Principal's "Motion for Discovery" is DENIED IN PART and GRANTED IN PART;

2. Principal's request that Request For Admissions numbers 5 through 8 be deemed admitted is DENIED;

3. Principal's motion that all RFAs be deemed admitted as untimely is DENIED;

4. DMC must serve amended responses to RFAs numbers 5 through 8 on or before **March 9, 2011;**

5. Principal shall file a declaration with supporting exhibits establishing its costs and expenses of bringing this motion on or before **March 9, 2011**; and

6. DMC shall have an opportunity to be heard regarding the imposition of such expenses and costs upon it by filing any objections on or before **March 15, 2011.**

IT IS SO ORDERED.

**Dated:** **March 2, 2011**              /s/ Sheila K. Oberto
                                          UNITED STATES MAGISTRATE JUDGE